In the United States District Court
for the District of Columbia

| | | |
|---|---|---|
| David W. Noble<br>2707 Ridge Road<br>Windsor Mill, Maryland 21244<br>240-477-7256<br><br>Plaintiff<br><br>v.<br><br>National Association of Letters Carriers,<br>    AFL-CIO<br>100 Indiana Avenue, Northwest<br>Washington, D.C. 20001<br><br>and<br><br>Alamo Branch 421<br>6218 Krempen Avenue<br>San Antonio, Texas 78233<br><br>and<br><br>Branch 9 NALC<br>5831 Cedar Lake Road<br>St. Louis Park, Minnesota 55416<br><br>Defendants | § § § § § § § § § § § § § § § § § § § § § § § § § § § | Case No. 22-01613 (DLF) |

**First Amended Complaint**

1.  In this action, a member of a national labor union who is running for union office
seeks to enforce his legal right to communicate with his fellow members about his candidacy by
having the union disseminate his campaign literature, at the member's own expense, by

RECEIVED

JUN 1 7 2022

Clerk, U.S. District & Bankruptcy
Courts for the District of Columbia

advertisements in the union's monthly magazine, the *Postal Record*, as well as in publications distributed by local affiliates (known as "branches"). The union and its incumbent officers use the magazine and branch publications to communicate with the membership. Because the election ballots are scheduled to be mailed to the membership in September, plaintiff seeks a preliminary injunction compelling the union and its local affiliates to accept his advertisements and disseminate them through their publications.

2. The Court has jurisdiction of this case under 28 U.S.C. §§ 1331 and 1337 and 29 U.S.C. § 481(c).

**PARTIES**

3. Plaintiff David W. Noble is a member of defendant National Association of Letter Carriers, AFL-CIO ("NALC") within the meaning of 29 U.S.C. § 402(o).

4. Defendants NALC, Branch 421, and Branch 9, are labor organizations within the meaning of 29 U.S.C. § 402(I). Defendant NALC has its national headquarters in Washington, D.C.

**FACTS**

5. This fall, NALC is holding its quadrennial election of officers. The incumbent officers are solidly entrenched. In the 134-year history of the union only once has a challenger defeated an incumbent president. That happened in 1978. Plaintiff Noble is running for NALC President. That position is an "officer" within the meaning of 29 U.S.C. § 402(n). Ballots in the election are scheduled to be mailed in September.

6. Union elections are controlled by the Labor-Management Reporting and Disclosure Act ("LMRDA"). The LMRDA permits incumbent union officers to conduct the elections in

which they run, but they must allow observers to watch the counting and tallying of ballots.

7.  Noble ran for president in 2014 and 2018, and tried to observe the counting and tallying.  In both 2014 and 2018 the election committees appointed by Noble's opponent had Noble arrested to prevent him from observing their doings.  In both 2014 and 2018 the charges against Noble were dismissed by courts months after the elections had been concluded.

8.  Plaintiff is running (with several other candidates) as a slate in opposition to NALC's incumbent leadership.  Encapsulating their main platform, which is to rid the union of an incompetent and corrupt leadership, they named the slate "Clean Sweep."

9.  Clean Sweep campaigns primarily on-line.  Noble administers several Facebook groups: National Association of Letter Carriers, AFL-CIO (17,600 members); the NALC Truth Page (23,000 members); Non-Career Postal Employees (13,000 members); Clean Sweep 2022 (2,400 members).  Noble estimates that he reaches about 10% of the membership by posting on-line.

10.  NALC has 280,000 members, who are (or were) employed in 13,000 facilities across the country.  The only economically feasible way for Clean Sweep to put its message before the entire membership is by advertizing in the union's publications.  A full-page ad in the *Postal Record* costs $2,750, which is less than 1/100th of the cost of mailing letters to every member.

11.  The *Postal Record*, which may be viewed at NALC.org, prominently features the activities of the union's incumbent officers, against whom Clean Sweep are running in the election.

12.  Accordingly, on December 18, 2021, Plaintiff Noble sent the NALC a request to place ads containing his campaign literature in the *Postal Record,* beginning with the February

2022 issue.  A true and accurate copy of this request is attached as Exhibit A.  On December 29, 2021 NALC lawyer Peter DeChiara refused Noble's request, except for a single issue in September 2022.  A true and accurate copy of the refusal is attached as Exhibit B.

13. DeChiara cites "longstanding NALC policy" as justification for his refusal. However, no such policy has ever been submitted to the membership for debate, approval, or comment.

14. In every issue of the *Postal Record* members are allowed to place ads requesting mutual transfers.

15.  In January 2022 Plaintiff Noble contacted Branch 421 and asked to run an ad with Clean Sweep campaign literature in its newsletter.  By letter dated March 6, 2022 Branch 421 refused Noble's request.  A true and accurate copy of Branch 421's letter is attached as Exhibit C.  In May 2022 Plaintiff Noble asked to run an ad in the Branch 9 newsletter.  By silence Branch 9 refused Noble's request.

**CLAIM FOR RELIEF**

16.  Section 401(c) of the Labor Management Reporting and Disclosure Act of 1959, ("LMRDA"), 29 U.S.C. § 481(c), requires unions to comply with all reasonable requests from members to distribute their campaign literature to all members by mail or otherwise.

17.  Noble's requests that his campaign literature, and literature from his slate, be distributed by ads in publications were reasonable.  By refusing to grant the requests, NALC, Branch 421, and Branch 9 violated section 401(c) of the LMRDA.

18.  The violations of the LMRDA are causing irreparable injury to plaintiff by preventing him from communicating, inexpensively and effectively, with a significant segment

of the union electorate.

WHEREFORE, Plaintiff prays the Court to enter a judgment as follows:

 A. Preliminarily and permanently enjoining defendants to distribute plaintiff's campaign literature, at plaintiff's expense, through advertisements in union publications;

 B. Declaring that section 401(c) requires the union to comply with reasonable requests to distribute campaign literature, at the member's expense, through advertisements in union publications;

 C. Awarding plaintiff his reasonable attorney fees and costs; and

 D. Awarding such other relief as may be just and proper.

       Respectfully submitted,

       David W. Noble
       2707 Ridge Road
       Windsor Mill, Maryland 21244
       240-477-7256
       dwnoble@gmail.com