June 30, 2022 Declaration of David W. Noble

I, David W. Noble, make this declaration based on personal knowledge.

1. NALC has about 2,000 local affiliates, which are known as branches.

2. Without NALC, branches could not exist.

3. NALC collects dues for branches and remits the dues to them.

4. NALC negotiates a national collective bargaining agreement, which applies to the branches and all of their members.

5. If NALC did not exist, branches would have no money.

6. If NALC did not exist, members of branches would not be covered by a collective bargaining agreement.

7. In 2018 I was forced to use litigation to compel Rolando to allow me to use NALC's library of 80,000 email addresses to send my campaign materials to a portion of NALC's electorate.

8. After the 2018 election Rolando destroyed the email address library, thus preventing me from sending campaign emails this year.

9. NALC branches are integral parts of NALC. If they were separate from NALC, branches could not exist.

10. Branches act as NALC's designee in the first two steps of the multi-step grievance-arbitration established by the nation-wide collective bargaining agreement.

11. Without NALC, branches would have nothing to do.

12. Branch 9's newsletter and Branch 421's newsletter both accept advertisements.

13. I intend to file suit concerning DOL's denial of my 2018 election appeal in about three months.

14. I estimate that it will take about three months to save enough money to secure an attorney to bring suit against DOL.

15. I want to avoid bringing a suit against DOL *pro se*.

16. I am retired and have income of about $60,000 per year.

17. The 2018 panel found that NALC holds conventions every year; in fact NALC holds conventions every other year.

18. The 2018 panel found that NALC conventions are always held in Washington, D.C.; in fact NALC has never held a convention in Washington, D.C.

19. The 2018 panel found that the defendant officers had submitted exhibits that showed their expenses were legitimate; in fact, in 24 years of litigation the defendant officers never submitted any exhibits that showed how they spent their "in-town" expense money.

20. The 2018 panel found that the membership had overwhelmingly approved the defendant officers' interpretation of the NALC Constitution; in fact, the officers' interpretation was never presented to the membership or voted on by the membership.

21. Rolando and his executive council used about $100,000 of the members' dues to pay for Young's unsuccessful defense in *Noble v. Young*.

22. The jury in *Noble v. Young* found that Young had made a false statement with actual malice.

23. Although I did not ask the jury for money, the jury awarded both compensatory and punitive damages.

24. The Facebook link to a video of my 2018 arrest may be found at: https://fb.watch/e1jc5Q9sZM/

25. As soon as I received the NALC's refusal to accept my advertisements until September I began searching for a lawyer to initiate a preliminary injunction.

26. I first tried to persuade Matthew Bennett to take my case about the advertisements.

27. Bennett represents me in a false arrest and false imprisonment suit stemming from the my forcible removal from my attempt to observe the counting and tallying of ballots in the 2018 election.

28. NALC has been represented by the NYC law firm of Cohen, Weiss, and Simon (CWS) since 1978.

29. I have been involved with CWS over that whole 44 years since 1978.

30. During the thirteen years I worked at NALC HQ I worked with CWS lawyers daily on negotiations and arbitrations.

31. I was almost always the witness through whom CWS presented cases in arbitration.

32. For the 24 years after I left NALC I pursued a suit called *Noble v. Sombrotto* and CWS represented the defendants.

33. According to salary.com CWS lawyers are paid about $2,000 per hour. I asked CWS lawyer Peter DeChiara to confirm that, but he did not reply. A true and accurate copy of a salary.com return on a Google search is attached as Exhibit I.

34. CWS is backed by NALC's $800 million in assets, and has a reputation as being a firm that is unpleasant to litigate against. CWS would rather fight to the bitter end than settle.

35. Matthew Bennett decided that he was not qualified to oppose CWS in an area of the law in which he had no experience.

36. There are a handful of "union democracy" lawyers in the country who are sometimes up to a fight with CWS.

37. On January 30, 2022 I contacted one of those union democracy lawyers, Arthur Z. Schwartz, and Schwartz agreed to take my case. A true and accurate copy of Schwartz's January 31, 2022 email is attached as Exhibit J.

38. Over the next four months Schwartz and I emailed and talked weekly or more often about when Schwartz would file a motion for a preliminary injunction.

39. Schwartz strung me along with excuses about cracking his vertebrae, having covid, being busy with other cases, and so forth.

40. In May, after giving Schwartz an ultimatum, I gave up and starting working on the preliminary injunction motion myself. Exhibit K is a true and accurate copy of an email exchange between me and Schwartz.

41. I resisted giving up on Schwartz because I dreaded becoming a *pro se* litigant.

42. The company defendants have chosen to apply address labels to my envelopes will charge from 32 cents per letter to $2.74, depending on volume. Exhibit L is a true and accurate copy of a quotation provided to me by Mosaic.

I declare under penalty of perjury that the foregoing is true and correct. Executed on June 30, 2022.

/s/ David W. Noble

David W. Noble