UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| David W. Noble, | ) ) ) ) | Civil Action No. 1:22-cv-01613-DLF |
| *Plaintiff,* | ) ) ) | |
| v. | ) ) ) | |
| National Association of Letter Carriers, AFL-CIO, *et al.* | ) ) ) ) | |
| *Defendants.* | ) ) | |

**DEFENDANTS' MOTION TO DISMISS**

Defendants National Association of Letter Carriers, AFL-CIO ("NALC") and NALC Branches 9 and 421 (together, "Defendants") hereby move under Federal Rules of Civil Procedure 12(b)(1), (b)(3) and (b)(6) for an order (1) dismissing with prejudice the claims against them in the June 17, 2022 First Amended Complaint ("Complaint") [ECF No. 4] of Plaintiff David Noble ("Noble") and (2) granting Defendants' such other relief as is just and proper.

1

Dated: August 5, 2022

Respectfully submitted,

/s/ *Peter D. DeChiara*
Peter D. DeChiara (admitted *pro hac vice*)
Kate M. Swearengen (admitted *pro hac vice*)
Matthew E. Stolz (admitted *pro hac vice*)
COHEN, WEISS AND SIMON LLP
900 Third Avenue, Suite 2100
New York, New York 10022-4869
(212) 356-0216

/s/ *Lucas R. Aubrey*
Lucas R. Aubrey (D.C. Bar No. 982849)
SHERMAN DUNN P.C.
900 Seventh Avenue, N.W., Suite 1000
Washington, D.C. 20001
(202) 785-9300

*Attorneys for Defendants National Association of Letter Carriers, AFL-CIO and NALC Branches 9 and 421*

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| David W. Noble,<br><br>*Plaintiff,*<br><br>v.<br><br>National Association of Letter Carriers, AFL-CIO, *et al.*<br><br>*Defendants.* | Civil Action No. 1:22-cv-01613-DLF |

# SECOND DECLARATION OF BRIAN RENFROE

I, Brian Renfroe, under penalty of perjury and in lieu of affidavit as permitted by 28 U.S.C. §1746, declare as follows:

Introduction

1. Since 2016, I have served as Executive Vice President of Defendant National Association of Letter Carriers, AFL-CIO ("NALC"). I make this declaration in support of Defendants' motion to dismiss. I base this declaration on my personal knowledge.

*2.* The August 2022 issue of the *Postal Record* has already been published and has been mailed to NALC's members. The next issue of the *Postal Record* to appear will be the September/October 2022 "election" issue, an issue in which candidates in NALC's 2022 officer election will be permitted to place paid campaign advertisements.

3. NALC Branches 9 and 421 have their own constitutions, their own officers, their own offices, their own members, their own staff and their own funds.

9835276.1

I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge and belief.

Executed at Washington, DC this __3__ th day of August 2022.

_____
Brian Renfroe

# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

------------------------------------------------------- x
David W. Noble,

               *Plaintiff,*

    v.

National Association of Letter
Carriers, AFL-CIO, *et al.*

              *Defendants.*

------------------------------------------------------- x

Civil Action No. 1:22-cv-01613-DLF

## **DEFENDANTS' MEMORANDUM IN SUPPORT OF MOTION TO DISMISS**

Peter D. DeChiara (admitted pro hac vice)
Kate M. Swearengen (admitted pro hac vice)
Matthew E. Stolz (admitted pro hac vice)
COHEN, WEISS AND SIMON LLP
900 Third Avenue, Suite 2100
New York, NY 10022-4869
(212) 356-0216

Lucas R. Aubrey (D.C. Bar No. 982849)
SHERMAN DUNN P.C.
900 Seventh Avenue, N.W., Suite 1000
Washington, DC 20001
(202) 785-9300

*Attorneys for Defendants National Association of Letter Carriers, AFL-CIO and NALC Branches 9 and 421*

9836967.1

**TABLE OF CONTENTS**

Page

PRELIMINARY STATEMENT ................................................................................................. 1

FACTUAL BACKGROUND .......................................................................................................... 2

    NALC and the Branches ................................................................................................ 2

    NALC Elections ............................................................................................................. 2

    The Postal Record ......................................................................................................... 2

    Noble's Requests to Place Paid Campaign Ads ............................................................ 3

    Noble's Lawsuit ............................................................................................................. 4

ARGUMENT .................................................................................................................................. 5

I.    Noble's Section 401(c) Claims Against the Branches Fail as a Matter of Law ................ 5

    A.    This Court is Not the Proper Venue for Noble's Section 401(c) Claims Against the Branches Because They Do Not Maintain Their Principal Offices in this District .............................................................................................. 5

    B.    Noble Has No Section 401(c) Cause of Action Against the Branches Because He is Not a Candidate for Office in the Branches .................................. 6

II.    Noble's Section 401(c) Claim Against NALC Is Moot Because the Issues of the *Postal Record* Preceding the "Election" Issue Have Already Been Published .................. 6

III.    Noble's Section 401(c) Claim Against NALC Fails Because the Statute Does Not Require a Union to Publish Candidate Campaign Ads ........................................................ 8

    A.    Section 401(c) Contains No Publication Requirement ......................................... 8

    B.    Reading a Publication Requirement into Section 401(c) Would Violate the First Amendment .................................................................................................. 10

CONCLUSION ............................................................................................................................... 12

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*Camarata v. Int'l Bhd. of Teamsters, Chauffeurs, Warehousemen & Helpers of Am.*
   478 F.Supp. 321, 331 (D.D.C. 1979) ................................................................. 8, 9, 10

*Dimondstein v. Am. Postal Workers Union,*
   964 F.Supp.2d 37 (D.D.C. 2013) .................................................................................. 9

*Edward J. DeBartolo Corp. v. Florida Gulf Coast Bldg. & Constr. Trades Council,*
   485 U.S. 568 (1988) .................................................................................................. 10

*Hurley v. Irish-Am. Gay, Lesbian and Bisexual Grp. of Bos., Inc.,*
   515 U.S. 557 (1995) .................................................................................................. 11

*Int'l Org. of Masters, Mates & Pilots v. Brown,*
   498 U.S. 466 (1991) .................................................................................................... 9

*Miami Herald Publ'g Co. v. Tornillo,*
   418 U.S. 241 (1974) .................................................................................................. 11

*Nat'l Ass'n of Mfgs. v. NLRB,*
   717 F.3d 947 (D.C. Cir. 2013) ............................................................................. 10, 11

*NetChoice, LLC v. Att'y Gen. Fla.,*
   34 F.4th 1196 (11th Cir. 2022) .................................................................................. 11

*Noble v. Nat'l Ass'n of Letter Carriers, AFL-CIO,*
   285 F.Supp.3d 128 (D.D.C. 2018) ....................................................................... 2, 6, 7

*Pac. Gas & Elec. Co. v. Pub. Utils. Comm'n of Calif.,*
   475 U.S. 1 (1986) ...................................................................................................... 10

*Shelley v. Am. Postal Workers Union,*
   775 F.Supp.2d 197 (D.D.C. 2011) .............................................................................. 9

*Yablonski v. United Mine Workers of Am.*
   305 F.Supp. 868, 872 (D.D.C. 1969) ................................................................... 8, 10

**Statutes**

29 U.S.C. § 481(c) ............................................................................................... *passim*

Defendants National Association of Letter Carriers, AFL-CIO ("NALC") and NALC Branches 9 and 421 (together, "Defendants") submit this memorandum in support of their motion under Federal Rules of Civil Procedure 12(b)(1), (b)(3) and (b)(6) to dismiss with prejudice the claims against them in the June 17, 2022 First Amended Complaint ("Complaint") [ECF No. 4] of Plaintiff David Noble ("Noble").

## PRELIMINARY STATEMENT

In this action, Noble, a candidate for NALC's presidency, claims that he has a right under Section 401(c) of the Labor-Management Reporting and Disclosure Act ("LMRDA"), 29 U.S.C. § 481(c), to place his campaign ads in NALC's *Postal Record* magazine and also in the publications of Branches 9 and 421. In its July 8, 2022 bench decision denying Noble's preliminary injunction motion, the Court determined that Section 401(c) gave Noble no such right. Accordingly, Noble's Section 401(c) claims fail as a matter of law and should be dismissed with prejudice.

Moreover, Noble's claim against NALC is moot. There is only one issue of the *Postal Record* that will appear between now and NALC's 2022 election—the September/October "election" issue—and all candidates, including Noble, will be allowed to place a campaign ad in that issue. The only controversy in this case was whether Noble would be allowed to place campaign ads in the issues of the *Postal Record* that *preceded* the September/October issue. Because all such issues have already been published, the Court can no longer grant Noble the relief he seeks. Noble may claim that he seeks a Section 401(c) ruling now to establish his rights in future elections, but whether he will run again in NALC's next election, in 2026, is entirely speculative. Accordingly, his claim against NALC is moot.

For these reasons, explained further below, the Court should grant Defendants' motion and dismiss with prejudice Noble's claims against them.

1

## FACTUAL BACKGROUND

NALC and the Branches

        NALC is a national labor union.  *See* Complaint ¶4.[1]  Branch 421 and Branch 9 are local labor organizations affiliated with NALC but distinct from it.  *See id.* at ¶3; *see also* June 28, 2022 Declaration of Brian Renfroe ("Renfroe Dec.") [ECF No. 14-1], at ¶3.[2]  Branch 9 represents city letter carriers in Minnesota, and Branch 421 represents city letter carriers in Texas.  *See* Renfroe Dec. ¶3.  Neither local union maintains an office in this District.  *See id.*

NALC Elections

        Every four years, NALC holds elections for its national officers, including for its President.  *See id.* at ¶4.  The nomination of candidates takes place at NALC's convention in the summer of an election year.  *See id.*  In the fall, NALC's membership votes on the candidates.  *See id.*

        NALC's local branches, including Branches 9 and 421, hold their own elections for their own Branch officers.  *See id.* at ¶5.  Only members of the Branch are allowed to vote in, and run for office in, a Branch election.  *See id.*

The Postal Record

        NALC has for many years published a magazine called the *Postal Record*.  *See id.* at ¶6.  NALC mails copies of the *Postal Record* to each of its members.  *See id.*

---

[1] For purposes of this motion only, Defendants assume the well-pleaded allegations in the Complaint to be true.

[2] Defendants support their motion with declarations only to the extent the motion seeks relief under Rules 12(b)(1) and (b)(3).  *See Noble v. Nat'l Ass'n of Letter Carriers, AFL-CIO*, 285 F.Supp.3d 128, 132 (D.D.C. 2018) (on a Rule 12(b)(1) motion, court may consider documents outside the pleadings).

2

NALC publishes the *Postal Record* monthly, except that sometimes it publishes a combined two-month issue for the two-month period following NALC's biennial convention. *See id*. ¶7.  The August 2022 issue of the *Postal Record* has already been published and mailed to NALC's members.  *See* August 3, 2022 Second Declaration of Brian Renfroe ("2d Renfroe Dec."), filed herewith, at ¶2.  The next issue of the *Postal Record* will be the combined September/October "election" issue, discussed below.  *See id*.

For decades, NALC has, in general, allowed no paid advertisements in the *Postal Record*, apart from ads by letter carriers seeking to swap positions.  *See* Renfroe Dec. ¶10.  However, once every four years, NALC allows candidates in its quadrennial national officer election to place paid advertisements in the "election" issue of the *Postal Record* that appears before the ballots are mailed to the membership.  *See id.* at ¶11.  The "election" issue for the 2022 election, in which candidates may place their campaign ads, will be the September/October 2022 issue.  *See id.* at ¶11.

Noble's Requests to Place Paid Campaign Ads

Noble has announced that he is running for NALC's presidency in the 2022 election.  *See* Complaint ¶8.  On December 18, 2021, Noble sent an email to NALC's President and its outside counsel stating: "I want to begin running ads in the Postal Record beginning in the February issue.  Please tell me the per-page cost and the monthly deadline."  *Id.*, Exhibit A.  NALC's counsel responded on December 29, 2021, writing that:

> In accordance with longstanding NALC policy, NALC does not run political ads in the *Postal Record*, with the exception of one issue every four years, preceding the NALC national officer elections.  The rates and deadline for political ads for that issue have not yet been determined.  NALC plans to announce the rates and deadline in the June 2022 issue of the *Postal Record*.

*Id.*, Exhibit B.

3

In January 2022, Noble asked Branch 421 to place in its newsletter a paid advertisement for his campaign. *See* Complaint ¶15. In May 2022, he made the same request of Branch 9. *See id.* Neither Branch has permitted him to place ads in their publications. *See id.*

Noble's Lawsuit

Even though NALC denied his request to place ads in the *Postal Record* in December 2021, Noble waited to file the instant suit until June 7, 2022. In his First Amended Complaint, he claims that his requests to place his campaign ads in Defendants' publications constituted a reasonable request under LMRDA Section 401(c) and that their refusal to accede to his request violated that provision. *See id.* at ¶¶16-17.

On June 17, Noble moved for a preliminary injunction to compel Defendants to publish his campaign ads in their publications. The Court denied the motion by order dated July 11. ECF No. 17. The Court's July 8 bench decision held that this Court was not the proper venue for Noble's Section 401(c) claims against Branches 9 and 421, because the Branches do not maintain their principal offices in this District. *See* July 8, 2022 *Transcript of Oral Ruling Before the Honorable Dabney L. Friedrich, United States District Judge* ("Tr."), attached hereto as Exhibit A, at 5. The Court also held that Noble failed to show a likelihood of success on the merits of his Section 401(c) claims against the Defendants. *See id*. at 7-12. It explained that Section 401(c) does not apply to campaign ads in a union's publication. The "campaign literature" referred to in Section 401(c) means "leaflets, circulars, handbills, or other stand-alone printed matter," not text contained within "a preexisting, regularly issued publication." *See id.* at 8-9. The Court also stated that it had found no case holding that Section 401(c) required a union to publish a candidate's campaign ad, and that it "decline[d] to be the first to so hold." *Id.* at 10. The Court explained that on two prior occasions, it had declined "to dictate to a union what it can and cannot print in a union publication." *Id*. The Court also noted that the U.S. Department of

4

Labor ("DOL") had determined that NALC had not violated Section 401(c) by declining to publish Noble's campaign ads in advance of the 2018 election. *See id.* at 10-11.

## ARGUMENT

I. **NOBLE'S SECTION 401(c) CLAIMS AGAINST THE BRANCHES FAIL AS A MATTER OF LAW**

    A. **This Court is Not the Proper Venue for Noble's Section 401(c) Claims Against the Branches Because They Do Not Maintain Their Principal Offices in this District**

As the Court held in denying Noble's preliminary injunction motion, this Court is not the proper venue for Noble's Section 401(c) claims against Branches 9 and 421. *See* Tr. 5. Section 401(c) only allows suit against a labor organization "in the district court of the United States in which such labor organization maintains its principal office." 29 U.S.C. § 481(c). Noble does not allege that either Branch 9, a local union in Minnesota, nor Branch 421, a local union in Texas, maintains its principal office in this District. In fact, it is undisputed that neither Branch has an office here. *See* Renfroe Dec. ¶3. Because Noble's claims against the Branches are not properly before this Court, they should be dismissed under Federal Rule of Civil Procedure 12(b)(3).

In his preliminary injunction reply brief, Noble argued that the Branches are not separate organizations from NALC. *See Plaintiff's Reply to Defendants' Opposition to Plaintiff's Motion for a Preliminary Injunction* ("Noble Reply") [ECF No. 16], at 6. Noble's argument, which the Court rejected, *see* Tr. 7, cuts against his own pleading; Noble's complaint names the Branches as defendants separate from NALC and specifically alleges them to be separate labor organizations. *See* Complaint ¶4 (referring in the plural to NALC, Branch 421 and Branch 9 as "labor organizations"). Noble's pleading is correct to consider the Branches as separate labor organizations: they have their own constitutions, their own officers, their own

5

members, their own staff, and their own funds. *See* 2d Renfroe Dec. ¶3. Moreover, as the Court noted, Section 401(c) refers separately to local and national labor organizations, *see* Tr. 6, indicating that Congress intended that, for purposes of the statute, local unions be considered as entities separate from their parent organizations.

### B. Noble Has No Section 401(c) Cause of Action Against the Branches Because He is Not a Candidate for Office in the Branches

Noble's claims against the Branches fail as a matter of law for the same reason his claim against NALC fails: as discussed below, Section 401(c) does not require a union to publish a candidate's campaign ads. His claims against the Branches fail for the additional reason that he is not a candidate for office in Branch 9 or Branch 421. Noble is, as he alleges, a candidate for "national president" of NALC. Noble Reply at 7. Section 401(c) only allows suit against a labor organization by a "candidate for office *in such labor organization*." 29 U.S.C. § 481(c) (emphasis added). Because Noble is not a candidate for office in the Branches, he has no Section 401(c) cause of action against them.

### II. NOBLE'S SECTION 401(c) CLAIM AGAINST NALC IS MOOT BECAUSE THE ISSUES OF THE *POSTAL RECORD* PRECEDING THE "ELECTION" ISSUE HAVE ALREADY BEEN PUBLISHED

The Court need not reach the merits of Noble's Section 401(c) claim against NALC, but instead can and should dismiss it as moot under Federal Rule of Civil Procedure 12(b)(1). *See Noble v. Nat'l Ass'n of Letter Carriers, AFL-CIO*, 285 F.Supp.3d 128, 131-34 (D.D.C. 2018) (Friedrich, J.) (dismissing Noble's claims as moot under Rule 12(b)(1)). A claim is moot when there is no longer an actual case or controversy or when it is no longer possible for the court to grant the plaintiff effective relief. *See id.* at 132.

There is no actual case or controversy over whether Noble may place a campaign ad in the September/October "election" issue of the *Postal Record*. Like all candidates, he will

be allowed to do so. *See* Renfroe Dec. ¶11. The dispute between Noble and NALC was whether he had a right to place campaign ads in the issues of the *Postal Record* that preceded the September/October "election" issue. The August issue, however, was the last such issue, and it has already been published. *See* 2d Renfroe Dec. ¶2. Because the Court cannot order NALC to publish Noble's campaign ads in issues of the *Postal Record* that have already been published, his Section 401(c) claim against NALC is moot.

Noble might argue that he may run again in NALC's 2026 election, so his Section 401(c) claim is capable of repetition yet evades review. A party asserting the capable-of-repetition-yet-evading-review exception to the mootness doctrine bears the burden of showing that it applies. *See Noble*, 285 F.Supp.3d at 132. That burden includes showing that the *same* complaining party would be subject again to the same action. *See id*. at 132. Here, it is speculative whether Noble will run again in the 2026 election. *See Noble*, 285 F.Supp.3d at 134 (holding Noble's claims moot when, among other things, Noble's future involvement in the dispute remained speculative). Moreover, even if Noble does run in 2026, and NALC adheres to its current policy regarding campaign ads, the issue would not evade review: Noble would have plenty of time to initiate another suit in advance of the 2026 election. Because any future harm to Noble is entirely speculative, and because this is not an issue that evades review, Noble cannot show that the exception applies.[3] Accordingly, the Court should dismiss his Section 401(c) claim against NALC as moot.

---

[3] That Noble seeks declaratory relief makes no difference to the mootness analysis. *See Noble*, 285 F.Supp.3d at 134-35.

### III. NOBLE'S SECTION 401(c) CLAIM AGAINST NALC FAILS BECAUSE THE STATUTE DOES NOT REQUIRE A UNION TO PUBLISH CANDIDATE CAMPAIGN ADS

Even if not moot, Noble's Section 401(c) claim against NALC should be dismissed under Rule 12(b)(6) for failure to state a claim.

#### A. Section 401(c) Contains No Publication Requirement

As the Court has already held in its preliminary injunction ruling, Section 401(c) does not require a union to publish a candidate's campaign ads in its publication. Section 401(c) requires a labor organization to comply with reasonable requests by a candidate to distribute a candidate's "campaign literature." As the Court explained, "campaign literature" means "leaflets, circulars, handbills, or other stand-alone printed matter," not text contained within "a preexisting, regularly issued publication." Tr. 8-9. If Congress intended to require unions to publish a candidate's campaign ads, it could have easily said so in the statute. It did not. As the Court noted, no court has ever read Section 401(c) as requiring a union to publish a candidate's campaign ads. See *id.* at 10.

Indeed, this Court has held on two prior occasions that Section 401(c) does *not* require a union to include a candidate's material in its publication. In *Yablonski v. United Mine Workers of Am.*, this Court held that Section 401(c) "does not authorize this type of relief" and so "is beyond our statutory authority to grant." 305 F.Supp. 868, 872 (D.D.C. 1969). The Court repeated that conclusion in *Camarata v. Int'l Bhd. of Teamsters, Chauffeurs, Warehousemen & Helpers of Am.*, finding that requiring inclusion of the candidates' material in the union's publication "is beyond the authority of this court to grant." 478 F.Supp. 321, 331 (D.D.C. 1979).

The DOL has also held that a union has no obligation under Section 401(c) to publish candidate ads. Specifically, in rejecting Noble's post-election challenges to NALC's 2018 elections, the DOL's Office of Labor-Management Standards concluded that it was "no

8

violation" of Section 401(c) for NALC to refuse Noble's request to place campaign ads in issues of the *Postal Record* that preceded the "election" issue. *See* Renfroe Dec., Exhibit B, at 6-7. That ruling, by the agency charged with administering the LMRDA, provides expert guidance on the meaning of the statute. *See Dimondstein v. Am. Postal Workers Union*, 964 F.Supp.2d 37, 42-43 (D.D.C. 2013) (this Court relying on DOL for guidance on interpretation of Section 401(c)). The DOL's ruling is particularly persuasive here since it aligns with this Court's own Section 401(c) decisions cited above.

That Section 401(c) does not impose a publication obligation is clear. But if there were any doubt about the matter, the provision would have to be read as not requiring a union to publish candidate campaign material. As this Court has explained, the provisions of Section 401(c) "are to be narrowly construed in accordance with the congressional intent to minimize judicial interference in union elections." *Camarata*, 478 F.Supp. at 330; *see generally Shelley v. Am. Postal Workers Union*, 775 F.Supp.2d 197, 207 (D.D.C. 2011) ("Federal courts have applied a long-standing policy of avoiding judicial interference in a union's self-governance and internal affairs.").

Reading Section 401(c) as imposing a publication requirement would also be contrary to the statute's purpose. As this Court recognized, "elected union officials are entitled to use union publications to express their views and to have their union activities reported in said publications." *Camarata*, 478 F.Supp. at 330. Section 401(c)'s purpose was to promote union democracy by giving candidates a means to communicate with the union's membership *other* than through the union-controlled publication—indeed a means of "commenting on the positions advocated in the union press." *Int'l Org. of Masters, Mates & Pilots v. Brown*, 498 U.S. 466,

9

476 (1991).  Section 401(c) was thus meant to provide candidates a counterweight to the union's publication, not a means to access the publication.

### B. Reading a Publication Requirement into Section 401(c) Would Violate the First Amendment

Even if Section 401(c) had language that could be interpreted as requiring a union to publish a candidate's campaign ads, the Court should refrain from adopting such an interpretation because it would violate the First Amendment.  *See Edward J. DeBartolo Corp. v. Florida Gulf Coast Bldg. & Constr. Trades Council*, 485 U.S. 568, 575 (1988) (when possible, courts will construe a statute to avoid "serious constitutional problems").  This Court has twice held that an injunction compelling a union to publish a candidate's material would violate the union's First Amendment rights.  In *Camarata*, candidates for union office requested, as a remedy for the union's alleged Section 401(c) violation, the publication of their campaign material in the union's publication.  478 F.Supp. 321.  This Court held that such relief "would infringe upon the union's First Amendment rights."  *Id*. at 331.  Similarly, in *Yablonski*, this Court denied a preliminary injunction sought by a candidate for union office to the extent the candidate sought under Section 401(c) to require union officials to print certain material in the union's publication.  305 F.Supp. 868.  The Court explained that "to tell the [union publication] what it can and cannot print," *id.* at 871, would be "in clear violation of the First Amendment's guarantee of freedom of the press."  *Id*. at 875.

This Court's decisions in *Camarata* and *Yablonski* are fully consistent with current First Amendment jurisprudence on the "right against compelled speech."  *Nat'l Ass'n of Mfgs. v. NLRB*, 717 F.3d 947, 957 (D.C. Cir. 2013) (overruled in part by *Am. Meat Inst. v. U.S. Dep't of Agric.*, 760 F.3d 18 (D.C. Cir. 2014) on other grounds).  Under the First Amendment, a speaker has the right not to disseminate messages created by others.  *See, e.g.*, *Pac. Gas & Elec.*

10

*Co. v. Pub. Utils. Comm'n of Calif.*, 475 U.S. 1, 12 (1986) (violation of First Amendment to order private utility company to include in its newsletter content prepared by third party); *Miami Herald Publ'g Co. v. Tornillo*, 418 U.S. 241, 258 (1974) (statute requiring newspaper to print content by political candidate violates First Amendment); *Nat'l Ass'n of Mfgs.* 717 F.3d at 956 (employers have right not to post NLRB poster notifying employees of their statutory rights). NALC can no more be enjoined to carry an advertisement in the *Postal Record* than it can be enjoined to write particular content for the *Postal Record.  See Hurley v. Irish-Am. Gay, Lesbian and Bisexual Grp. of Bos., Inc.*, 515 U.S. 557, 570 (1995) ("[E]ven the simple selection of a paid noncommercial advertisement for inclusion in a daily paper . . . fall[s] squarely within the core of First Amendment security . . . .") (citing *Miami Herald*, 418 U.S. at 258; *N.Y. Times Co. v. Sullivan*, 376 U.S. 254, 265–266 (1964)).  That NALC allows candidate ads in one quadrennial issue in no way changes that conclusion, since a private entity has the fundamental right to decide "to what extent" to disseminate third-party-created content.  *NetChoice, LLC v. Att'y Gen. Fla.,* 34 F.4th 1196, 1218 (11th Cir. 2022).

   Because Section 401(c) does not require NALC to publish Noble's campaign ads, and because requiring NALC to do so would violate the First Amendment, Noble's Section 401(c) claims should be dismissed as a matter of law.

11

**CONCLUSION**

For the foregoing reasons, the Court should grant Defendants' motion and dismiss with prejudice the claims against them in the First Amended Complaint.

Dated:  August 5, 2022

>Respectfully submitted,
>
>/s/ *Peter D. DeChiara*_____
>Peter D. DeChiara (admitted *pro hac vice*)
>Kate M. Swearengen (admitted *pro hac vice*)
>Matthew E. Stolz (admitted *pro hac vice*)
>COHEN, WEISS AND SIMON LLP
>900 Third Avenue, Suite 2100
>New York, NY  10022-4869
>(212) 356-0216
>
>/s/  *Lucas R. Aubrey*_____
>Lucas R. Aubrey (D.C. Bar No. 982849)
>SHERMAN DUNN P.C.
>900 Seventh Avenue, N.W., Suite 1000
>Washington, DC 20001
>(202) 785-9300
>
>*Attorneys for Defendants National Association of Letter Carriers, AFL-CIO and NALC Branches 9 and 421*