In the United States District Court
for the District of Columbia

| | |
|---|---|
| David W. Noble<br>2707 Ridge Road<br>Windsor Mill, Maryland 21244<br>240-477-7256<br><br>　　　　Plaintiff<br><br>　　v.<br><br>National Association of Letters Carriers,<br>　　AFL-CIO<br>100 Indiana Avenue, Northwest<br>Washington, D.C. 20001<br><br>　　and<br><br>Alamo Branch 421<br>6218 Krempen Avenue<br>San Antonio, Texas 78233<br><br>　　and<br><br>Branch 9 NALC<br>5831 Cedar Lake Road<br>St. Louis Park, Minnesota 55416<br><br>　　　　Defendants | Case No. 22-01613 (DLF) |

**PLAINTIFF'S MEMORANDUM IN OPPOSITION TO
DEFENDANTS' MOTION TO DISMISS**

### TABLE OF CONTENTS

Table of Authorities..................................................................................................................2
Statement of the Case...............................................................................................................2
Facts..........................................................................................................................................2
Defendants' Motion to Dismiss should be Denied...................................................................3

I. Defendants have provided no proper evidence to support their arguments that plaintiff's claims against the branches fail...............................................................................................................3
II. Plaintiff's LMRDA claim is not moot..................................................................................3
III.  The law contains a publication requirement....................................................................4
        A. The Court's ruling on the definition of "campaign literature" was wrongly decided....4
        B.  Defendants (and the Court) mis-cite district case law...................................................4
        C.  DOL has not held that a union has no obligation to publish candidate ads...................5
        D. The Six Circuit found an obligation to publish ads.........................................................5
IV. Reading a publication requirement into the law would not violate the First Amendment.......7

CONCLUSION .................................................................................................................................7

**TABLE OF AUTHORITIES**

*Hodgson v. United Mine Workers of America,* 344 F.Supp. 17 (D.D.C. 1972.)

*International Organization of Masters, Mates & Pilots v. Brown*, 498 U.S. 466, 476 (1991)

**Statement of the Case**

In this action, David Noble, a member of the National Association of Letter Carriers who is running for office, seeks to enforce his legal right to communicate with his fellow members about his candidacy by having the union disseminate his campaign literature, at his own expense, by placing ads in the union's publications – the same publications that the incumbent officers use to communicate with the membership.

**FACTS**[1]

Plaintiff David Noble is a member of the National Association of Letter Carriers, and is running for the office of President in an election that will begin in September.  He is a member of a slate of candidates called "Clean Sweep." Plaintiff has been campaigning on-line for eight years, and has built a following of tens of thousands of members.  However, plaintiff estimates

---

[1] *See* Noble's declarations.

that his on-line posts reach only about 10% of the electorate.  The union's monthly magazine – the *Postal Record* – is mailed to every member every month.  The magazine prominently features the activities and ideas of the union's incumbent officers, against whom plaintiff and Clean Sweep are running in the election.  Each of the ten incumbent resident officers has a full-page column in the magazine.  The *Postal Record* may be viewed at NALC.org.

Accordingly, on December 18, 2021 plaintiff notified the incumbent president that plaintiff wanted to place political ads in the *Postal Record* beginning in the February 2022 issue.  On December 29 a union lawyer answered plaintiff's notification, saying that "in accordance with longstanding NALC policy" the union does not run political ads in the *Postal Record*, with the exception of [the September] issue every four years.  No such policy has ever been presented to the membership for approval.

### DEFENDANTS' MOTION TO DISMISS SHOULD BE DENIED

**I.  Defendants have provided no proper evidence to support their argument that plaintiff's claims against the branches fail.**

Defendants' argument about the branches rests on the Second Declaration of Brian Renfroe.  That declaration was made, at least in part, on inadmissible "belief."  Because the declaration does not identify what parts were made on belief, the entire declaration should be disregarded**.**

**II.  Plaintiff's LMRDA Claim is Not Moot.**

Plaintiff has run for office before and may well do so again.  Under these precise circumstances the Supreme Court ruled that a litigant's LMRDA suit is not moot.  *Masters, Mates & Pilots v. Brown,* 498 U.S. 466 (1991).

### III. The law contains a publication requirement.

**A. The Court's ruling on the definition of "campaign literature" was wrongly decided.**

In *Brown, supra,* the Supreme Court instructed that courts make a broad interpretation of Section 401(c). Rather than heed that instruction, in its denial of plaintiff's motion for a preliminary injunction the Court made the very narrow ruling that campaign literature means "leaflets, circulars, or other stand-alone printed matter." Defendants had not made that argument in their opposition. The Court made it up for them. The Court allegedly drew that definition from Webster's Third New International Dictionary, 1961. No other Court has ever used that definition. Even other dictionaries conflict with the Court's definition. The Lawinsider.com dictionary says, "Campaign Literature means any communication which meets the following criteria: (1) it is distributed during the campaign cycle, (2) it identifies the candidate (even if the fact of candidacy is not mentioned in the communication, it is deemed that there is a valuable benefit to the candidate gained by the name recognition generated through the distribution of a communication during a campaign cycle) . . . ." Under the Lawinsider.com's dictionary an ad in a magazine is campaign literature. A ruling based on a single dictionary's definition is wrong and too flimsy a basis to support a motion to dismiss.

**B. Defendants (and the Court) mis-cite district case law.**

Among the cheapest and ugliest tricks lawyers play with *pro se* litigants is omitting adverse precedent. That is what happened here. Because the Court uncritically accepted defendants' account of district case law, it allowed itself to be led into error as well.

Defendants cite two cases, *Yablonski v. United Mineworkers of Am.* 305 F.Supp 868

(D.D.C. 1969) and *Camarata v. Int'l Bhd. of Teamsters, Chauffeurs, Warehousemen & Helpers of Am*. 478 F.Supp. 321 (D.D.C. 1979.)  According to defendants, both cases show that no court should ever interfere with the content of a union publication.  Neither case involves a litigant who wishes to place a paid ad in a union publication.

Omitted from defendants' discussion of district court precedent is *Hodgson v. United Mine Workers Union,* 344 F.Supp. 17 (D.D.C. 1972).  In *Hodgson* this Court interferes with the content of a union publication.  The presence of *Hodgson* denies defendants the chance to make "always" and "never" arguments about case law in this district.

**C.  DOL has not held  that a union has no obligation to publish candidate ads.**

Defendants contend that the DOL held that a union has no obligation to publish candidate ads.  That is false.  The DOL held that there was no violation based on the union's policy of limiting political ads to a single issue of the magazine every four years.  DOL's ruling conflicts with the Supreme Court's ruling in *Brown, supra*, in which the Supreme Court held that union policies must not be considered in Section 401(c) cases.

**D. The Sixth Circuit found an obligation to publish ads.**

The case is *Knox County Local v. National Rural Letter Carriers' Association, et al.,* 720 F.2d 936 (6th Cir. 1983).

In that case, defendant National Rural Letter Carriers' Association (NRLCA) negotiated a collective bargaining agreement.  Plaintiff Knox County opposed the agreement.  Plaintiff tried to place an advertisement opposing the agreement in the national union magazine.  NRLCA refused to accept the advertisement, saying it would create "internal union strife."

The district court granted summary judgment to NRLCA ruling, "Neither § 411 of the

LMRDA nor the First Amendment guarantees advertising space in the defendants' publication . . . without their consent."

The circuit reversed.

The circuit found that: "Title I [of the LMRDA] requires the NRLCA to publish the paid advertisement submitted by the Knox County Local.  Not only is the 'speech' in this case of the kind that is "protected" by the first amendment, such "speech" goes to the core of First Amendment values.

\* \* \*

"The NLRCA desires to prevent the publication of the local's ad because of its message.  In *Police Department v. Mosely,* 408 U.S. 92, 95-96 (1972), the Supreme Court resoundingly prohibited any content-based restrictions upon expression: 'Above all else, the First Amendment means that government has no power to restrict expression because of its message, its ideas, its subject matter, or its content.'

\* \* \*

"When the NRLCA opened its magazine to its members [by accepting advertising] . . . it effectively opened the forum to the public.  Having done so, the national union cannot unreasonably preclude ads submitted by members based on their content.  *See also Helton [v. NLRB,* 658 F.2d 883, (DC Cir. 1981)].

\* \* \*

"In the present case . . .the NRLCA's magazine is the only economically feasible channel capable of communication capable of reaching the [entire] union community.  As the Knox County Local members are relatively small, the cost of a bulk mailing would have been

impracticable. By refusing to allow those members access to its union-wide publication, the NLRCA foreclosed the only reasonable avenue for effective communication . . .."

As in *Knox County* the plaintiff's proffered advertisements are protected speech. As in *Knox County* the incumbent officers who animate the union want to prevent publication of plaintiff's advertisements because of their content. As in *Knox County* the union magazine accepts advertising. As in *Knox County* publication of plaintiff's advertisements in the union magazine is the only economically feasible channel capable of reaching the entire union community, and the incumbent officers are trying to foreclose the only reasonable avenue for effective communication.

During the hearing on plaintiff's motion for a preliminary injunction the Court expressed consternation at being presented with a Sixth Circuit case. After conducting a cursory survey plaintiff can report that all of the judges on the district and circuit panels routinely cite cases from other circuits.

**IV. Reading a publication requirement into the law would not violate the First Amendment**.

Defendants argue that "the right against compelled speech" protects them from printing the ads of their political competitors. However, as explained in *Knox, supra*, plaintiff is a co-owner of the union magazine. No court has ever used the right against compelled speech to regulate the relationship between co-owners of a magazine.

**CONCLUSION**

Defendants' motion to dismiss should be denied.

Respectfully submitted,

/s/David W. Noble

David W. Noble
2707 Ridge Road
Windsor Mill, Maryland 21244
240-477-7256
dwnoble@gmail.com