# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| _____ | ) | |
| David W. Noble, | ) | Civil Action No. 1:22-cv-01613-DLF |
| | ) | |
| *Plaintiff,* | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| National Association of Letter | ) | |
| Carriers, AFL-CIO, *et al.* | ) | |
| | ) | |
| *Defendants.* | ) | |
| _____ | ) | |

## DEFENDANTS' REPLY IN SUPPORT OF MOTION TO DISMISS

Peter D. DeChiara (admitted *pro hac vice*)
Kate M. Swearengen (admitted *pro hac vice*)
Matthew E. Stolz (admitted *pro hac vice*)
COHEN, WEISS AND SIMON LLP
900 Third Avenue, Suite 2100
New York, New York 10022-4869
(212) 356-0216

Lucas R. Aubrey (D.C. Bar No. 982849)
SHERMAN DUNN P.C.
900 Seventh Avenue, N.W., Suite 1000
Washington, D.C. 20001
(202) 785-9300

*Attorneys for Defendants National Association of Letter Carriers, AFL-CIO and NALC Branches 9 and 421*

# TABLE OF CONTENTS

Page

I.    NOBLE'S SECTION 401(c) CLAIMS AGAINST THE BRANCHES FAIL AS A
      MATTER OF LAW.............................................................................................. 1

II.   NOBLE'S SECTION 401(c) CLAIMS FAIL AGAINST ALL THE
      DEFENDANTS BECAUSE THE STATUTE DOES NOT REQUIRE A UNION
      TO PUBLISH A CANDIDATE'S CAMPAIGN ADVERTISEMENTS.......................... 2

      A.    No Court Has Ever Held that Section 401(c) Requires a Union to Publish a
            Candidate's Campaign Ads................................................................................. 2

      B.    Nothing in the Text of Section 401(c) Requires A Union to Publish
            Candidate Campaign Ads .................................................................................. 6

      C.    Reading a Publication Requirement into Section 401(c) Would Violate the
            First Amendment ............................................................................................... 8

CONCLUSION.................................................................................................................... 8

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Cobell v. Norton*,
  391 F.3d 251 (D.C. Cir. 2004) ...................................................................................................1

*Hodgson v. United Mine Workers of Am.*,
  344 F. Supp. 17 (D.D.C. 1972) ...............................................................................................2, 3

*Int'l Org. of Masters, Mates & Pilots v. Brown*,
  498 U.S. 466 (1991) ..............................................................................................................5, 7, 8

*Knox Cnty. Local v. Nat'l Rural Letter Carriers' Ass'n*,
  720 F.2d 936 (6th Cir. 1983) ..............................................................................................3, 4, 5, 8

*Members for a Democratic Union v. Local 1101, Communications Workers of Am.*,
  697 F. Supp. 771 (S.D.N.Y. 1988) ...............................................................................................4

*Messina v. Local 1199 SEIU*,
  205 F.Supp.2d 111 (S.D.N.Y. 2002) ...........................................................................................4

*United States v. 8 Gilcrease Lane*,
  587 F.Supp.2d 133 (D.D.C. 2008) ...............................................................................................2

Defendants National Association of Letter Carriers, AFL-CIO ("NALC") and NALC Branches 9 and 421 (together, "Defendants") submit this reply memorandum in further support of their August 5, 2022 motion [ECF No. 19] to dismiss the June 17, 2022 First Amended Complaint ("Complaint") of Plaintiff David Noble ("Noble") [ECF No. 4], and in response to Noble's August 26, 2022 opposition to the motion.

## I.   NOBLE'S SECTION 401(c) CLAIMS AGAINST THE BRANCHES FAIL AS A MATTER OF LAW

In Defendants' opening memorandum ("Def. Mem.") [ECF No. 19], at 5-6, they explained that Noble's claims under Section 401(c) of the Labor Management Reporting and Disclosure Act ("LMRDA"), 29 U.S.C. §481(c), against Branches 9 and 421 are not properly before the Court because neither branch maintains an office in this District, and also that the claims fail for the additional reason that Noble is not a candidate for office in either branch. Noble responds, *see Plaintiff's Mem. in Opposition to Defendants' Motion to Dismiss* ("Noble Mem.") [ECF No. 21], at 3, by asserting that Defendants' contention that the branches are separate entities from NALC rests on the August 3, 2022 *Second Declaration of Brian Renfroe* ("Second Renfroe Dec.") [ECF No. 19].  Noble argues, *see* Noble Mem. at 3, that that declaration should be disregarded because Renfroe signed his declaration with the formulation "to the best of my knowledge and belief."   Second Renfroe Dec. at 2.

Noble's argument fails.  Renfroe made his declaration under 28 U.S.C. §1746 and based it on his "personal knowledge."  Second Renfroe Dec. ¶1.  Noble cites no authority showing that a 28 U.S.C. §1746 declaration made in support of a motion to dismiss is invalid because it ends with the formulation "to the best of my knowledge and belief."  *See Cobell v. Norton*, 391 F.3d 251, 260 (D.C. Cir. 2004) (holding that 28 U.S.C. §1746 declaration made on knowledge and belief "is sufficient" and that summary judgment affidavit rules do not apply);

*United States v. 8 Gilcrease Lane*, 587 F.Supp.2d 133, 139 (D.D.C. 2008) (unlike Rule 56 affidavits, 28 U.S.C. §1746 declaration may be made on information and belief).

In any event, the conclusion that the branches are separate from NALC does not depend on the Second Renfroe Declaration.  Noble effectively admitted that the branches were separate from NALC when he named them as separate defendants in his Complaint.  *See* ECF No. 4.  In addition, Noble alleges in his Complaint that NALC and the two branches are separate labor organizations.  *See id*. ¶4.  Moreover, in his declaration, Noble admits that Branches 9 and 142 have their own members, their own officers, their own funds and their own constitution.  *See* Aug. 26, 2022 Declaration of David W. Noble ("Noble Dec.") [ECF No. 21-1], at ¶¶2, 5, 7, 8. Noble's own pleading and declaration thus establish that the two branches are entities affiliated with NALC but separate from it.  Noble's claims against the two branches thus fail as a matter of law for the reasons stated in Defendants' opening memorandum.

## II.   NOBLE'S SECTION 401(c) CLAIMS FAIL AGAINST ALL THE DEFENDANTS BECAUSE THE STATUTE DOES NOT REQUIRE A UNION TO PUBLISH A CANDIDATE'S CAMPAIGN ADVERTISEMENTS

Defendants explained in their opening brief that Noble's Section 401(c) claims fail against all three defendants because the statue does not require a union to publish a candidate's campaign advertisements.  *See* Def. Mem. 8-11.

### A.   No Court Has Ever Held that Section 401(c) Requires a Union to Publish a Candidate's Campaign Ads

As the Court noted in its decision denying Noble's preliminary injunction motion, no court has ever read Section 401(c) as requiring a union to publish a candidate's campaign ads. *See* July 8, 2022 *Transcript of Oral Ruling Before the Honorable Dabney L. Friedrich, United States District Judge* ("Tr.") at 10.  Noble accuses Defendants of "omitting adverse precedent," Noble Mem. at 4, and cites *Hodgson v. United Mine Workers of Am.*, 344 F. Supp. 17 (D.D.C.

1972), and *Knox Cnty. Local v. Nat'l Rural Letter Carriers' Ass'n*, 720 F.2d 936 (6ᵗʰ Cir. 1983). *See* Noble Mem. at 5.  Neither case, however, was decided under Section 401(c).

In *Hodgson*, the court found that a union, in conducting its officer election, had committed numerous violations of federal law, including through misuse of the union's journal, the purchase and distribution of campaign materials, and the manipulation of salary increases to its employees.  *See* 344 F. Supp. at 22-31.  The court nullified the results of the tainted election and ordered the election re-run under the supervision of the U.S. Department of Labor.  *See id.* at 35.  As part of the relief it fashioned to address the union's prior violations, the court ordered that, for a limited period preceding the supervised re-run, the union's journal was to provide candidates equal space to express their views.  *See id.* at 36.  *Hodgson* thus required a union to open its journal to candidates not as a matter of right under Section 401(c), but only as a remedy for the union's prior violations of federal law and only for the period preceding the government-supervised re-run.  *Hodgson* thus provides no support for Noble's claim that a candidate in a union election has a right under Section 401(c) to place ads in its publication.

In *Knox*, the Sixth Circuit held that a national union had an obligation to publish an ad by one of its affiliated locals, but the court did not base its decision on Section 401(c).  *See* 720 F.2d at 937-40.  The Sixth Circuit based its decision on LMRDA Title I, 29 U.S.C. §411, a section of the LMRDA separate from the Title IV election provisions that contain Section 401(c).  *See* 29 U.S.C. §§481-83.  Noble does not assert a Title I claim in this case.  His Complaint makes clear that it rests specifically and entirely on Section 401(c).  *See* ECF No. 4, at ¶¶16-17 and p.5 (¶B).  Thus, like *Hodgson*, *Knox* provides no support for Noble's lawsuit.

*Knox* is also factually distinguishable from the instant case.  In *Knox*, the national union accepted paid advertisements in its weekly magazine, with no guidelines establishing the

quantity or content of accepted ads. *See* 720 F.2d at 937. It used the magazine to urge membership ratification of a collective bargaining contract that the union had negotiated. *See id*. When the local affiliate sought to place an ad in the national's magazine opposing ratification of the contract, the national union refused, asserting that the ad would create "internal union strife." *Id*. In requiring the national union to publish the ad, the Sixth Circuit focused on the fact that (1) the national union allowed any type of ads in its magazine, thus making the magazine into what the court called an "open forum," *id*. at 940; (2) the national union had used the magazine to promote the contract's ratification, so that the local's ad represented the other side of an internal union "debate," *id.*; and (3) the national union's refusal to run the local's ad was "purely content-based," rejecting the ad because of its "message." *Id.*

Here, Noble does not allege facts showing that the *Postal Record* is an "open forum" that allows the unrestricted placement of ads. In fact, he alleges that the only ads allowed in the *Postal Record* are those by letter carriers seeking to swap positions. ECF No. 4, at ¶14. Moreover, while Noble alleges that the *Postal Record* "features the activities of the union's incumbent officers," ECF No. 4, at ¶11, he does not allege that the incumbent officers have used the publication to promote one side of an internal union debate while excluding views expressing the other side. *See Messina v. Local 1199 SEIU*, 205 F.Supp.2d 111, 124 (S.D.N.Y. 2002) (distinguishing *Knox* on ground that plaintiff "has not alleged and does not argue that she was denied the opportunity to participate on one side of a debate where views of the other side of the debate were widely disseminated in the newspaper"); *Members for a Democratic Union v. Local 1101, Communications Workers of Am.*, 697 F. Supp. 771, 775-76 (S.D.N.Y. 1988) (distinguishing *Knox* on ground that the union newspaper had not previously carried any articles or advertisements on the subject of plaintiffs' proposed ad). Finally, there is no basis to conclude

that NALC's exclusion of Noble's campaign ads was "content-based."  Noble does not allege

that NALC rejected his proposed campaign ads after seeing what he says in them.  Indeed, he

does not even allege that he ever showed NALC his proposed ads.  *See* Ex. A. to Noble's June

17, 2022 *Motion for Preliminary Injunction* [ECF No. 5-1], at ECF p.1 (Noble informing NALC

by email that he wants to begin running ads, but not providing the content of the proposed ads).

NALC rejected the ads because the *Postal Record* does not accept ads (other than "mutual

transfer" job swap ads and candidate campaign ads in the quadrennial "election" issue).  *See* June

28, 2022 *Declaration of Brian Renfroe* ("First Renfroe Dec.") [ECF No. 14-1], at ¶¶10-11.[1]

        In his opposition, Noble also references the decision by the United States

Department of Labor ("DOL") rejecting his challenges to NALC's 2018 election.  *See* Noble

Mem. at 5.  First, Noble claims it is false for Defendants to contend that the DOL's decision held

that a union has no obligation to publish candidate campaign ads.  In fact, in denying his request

to place campaign ads in the *Postal Record* months before the mailing of ballots, *see* First

Renfroe Dec., Ex. B, at 6-7 [ECF No. 14-1, at ECF pp.77-78], the DOL necessarily interpreted

Section 401(c) as not giving candidates an absolute right to place their campaign ads in a union's

publication.  Noble also claims that the DOL's decision conflicts with the Supreme Court's

decision in *Int'l Org. of Masters, Mates & Pilots v. Brown*, 498 U.S. 466 (1991).  *See* Noble

Mem. at 5.  Nothing in *Brown*, however, supports, or even concerns, a candidate's claimed right

to place ads in a union publication.

---

        [1] In addition to being legally irrelevant and factually distinguishable, *Knox* was also wrongly decided.  In seeking to remedy a situation it deemed inequitable, the Sixth Circuit stretched LMRDA Title I far beyond the reach of its text.  In addition, the nearly 40-year-old decision is inconsistent with current First Amendment jurisprudence on compelled speech.  However, because *Knox* is irrelevant to the instant suit, the Court needed not pass on the validity of the Sixth Circuit decision.

In sum, Noble makes no showing that any court (or government agency) has ever supported his claim that Section 401(c) entitles a candidate to place ads in a union publication.

**B.   Nothing in the Text of Section 401(c) Requires A Union to Publish Candidate Campaign Ads**

There is a good reason that no court has ever held that Section 401(c) requires a union to publish candidate campaign ads: nothing in the statute's text contains such a requirement. Section 401(c) only requires a union to distribute a candidate's "campaign literature" and, as the Court explained in its preliminary injunction ruling, the term "literature" "most naturally refers" to "leaflets, circulars, handbills, or other printed matter," not to "advertisements within a broader non-campaign publication." Tr. 8-9 (citing *Webster's Third New International Dictionary*).

Noble argues that the Court erred by basing its reading of Section 401(c) on a single dictionary definition, claiming that "other dictionaries conflict with the Court's definition." Noble Mem. 4. In fact, although the Court cited just one dictionary (*Webster's*), *see* Tr. 9, other dictionaries fully support the Court's reading of the statute. For example, *Merriam-Webster* defines "literature" to include "printed matter (such as leaflets or circulars),"[2] *Dictionary.com* defines it to include "any kind of printed material, as circulars, leaflets, or handbills,"[3] and *Collins* offers a list of synonyms to the term "literature" that includes circular, pamphlet, leaflet, brochure and handout.[4] In sum, the consensus among dictionaries establishes

---

[2] *Literature*, MERRIAM-WEBSTER, https://www.merriam-webster.com/dictionary/literature (last visited Aug. 30, 2022).

[3] *Literature*, DICTIONARY.COM, https://www.dictionary.com/browse/literature (last visited Aug. 30, 2022).

[4] *Literature*, COLLINS, https://www.collinsdictionary.com/us/dictionary/english-thesaurus/literature (last visited Aug. 30, 2022).

that the Court was entirely correct in what it deemed to be the natural reading of the term
"literature."

Noble claims that other dictionaries conflict with the Court's reading of the term
"literature," but he cites none.  He cites only *Lawinsider.com*, which is not a dictionary, but a
website that describes itself as a "contract database and resource center."[5]  From the multiple
entries on that website, Noble chose to cite a definition for "campaign literature" contained in
Section 2.130.040(b) of the Santa Clara, California City Code.[6]  He provides no explanation of
the relevance of that particular municipal code to federal labor law.  Nor does he show how that
code's definition, which makes no reference to campaign ads in a publication, could or should
override the Court's understanding of the term "literature."

In challenging the Court's reading of Section 401(c), Noble also asserts that
*Brown*, 498 U.S. 466, requires a "broad" reading of the statute.  Noble Mem. at 4.  By a "broad"
interpretation of Section 401(c), the Court in *Brown* meant an interpretation that prevents a union
from imposing limitations on a candidate's right to distribute campaign literature to members,
such as by imposing a rule permitting such distributions only after the union's nominating
convention has occurred.  *See id.* at 477.  *Brown* nowhere even hints that Section 401(c) gives
candidates the right to force a union to include their ads in the union's magazine.  Indeed, *Brown*
recognizes "incumbents' control" of the union newspaper, and explains that because of that
control, the LMRDA demands a "broad interpretation of the candidate's right to distribute

---

[5] *About*, LAW INSIDER, https://www.lawinsider.com/about (last visited Aug. 30, 2022).

[6] SANTA CLARA, CA CITY CODE § 2.130.040(b),
https://www.fppc.ca.gov/content/dam/fppc/NS-Documents/TAD/ab-
571/cities/SantaClara%20CCL.pdf (last visited Aug. 30, 2022).

literature *commenting on the positions advocated in the union press*."  *Id.* at 476 (emphasis

added).  In other words, the Court in *Brown* saw Section 401(c) as a mechanism for giving

candidates a means of communicating their views to members *other* than via union-controlled

publications.

### C.   Reading a Publication Requirement into Section 401(c) Would Violate the First Amendment

As Defendants explained in their opening brief, even if Section 401(c) had

language that could be interpreted as requiring a union to publish a candidate's campaign ads, the

Court should refrain from adopting such an interpretation since doing so would violate the First

Amendment's prohibition on compelled speech.  *See* Def. Mem. at 10-11.

Noble argues that compelling NALC to include his ads in the *Postal Record*

would not violate the First Amendment's prohibition on compelled speech because, he asserts,

he is a "co-owner" of the *Postal Record*.  Noble Mem. at 7.[7]  Despite what he now says in his

brief, Noble alleges no facts in his Complaint showing him to be the co-owner of the *Postal

Record.*  To the contrary, he alleges -- correctly -- that the *Postal Record* is "*the union's*"

monthly magazine.  ECF No. 4, at ¶1 (emphasis added).  Accordingly, compelling NALC to

publish Noble's ads in the *Postal Record* would violate the First Amendment doctrine against

compelled speech.

### <u>CONCLUSION</u>

For the foregoing reasons and those set forth in Defendants' opening

memorandum, the Court should grant their motion and dismiss the Complaint with prejudice.

---

[7] Noble bases his assertion on *Knox*, *see* Noble Mem. at 7, which in one sentence alludes to union members as "co-owners."  *Knox*, 720 F.2d at 941.  *Knox* makes this passing reference without explanation and without citation to authority.

Dated:  New York, New York.
       September 2, 2022

Respectfully submitted,

/s/ *Peter D. DeChiara*_____
Peter D. DeChiara (admitted *pro hac vice*)
Kate M. Swearengen (admitted *pro hac vice*)
Matthew E. Stolz (admitted *pro hac vice*)
COHEN, WEISS AND SIMON LLP
900 Third Avenue, Suite 2100
New York, New York  10022-4869
(212) 356-0216

/s/  *Lucas R. Aubrey*_____
Lucas R. Aubrey (D.C. Bar No. 982849)
SHERMAN DUNN P.C.
900 Seventh Avenue, N.W., Suite 1000
Washington, D.C. 20001
(202) 785-9300

*Attorneys for Defendants National Association of Letter Carriers, AFL-CIO and NALC Branches 9 and 421*

**Certificate of Service**

I certify that I cause of a copy of the foregoing to be served, via the Court's ECF

system, and also by first-class mail, postage prepaid, and by email, upon:

David Noble
2707 Ridge Road
Windsor Mill, MD 21244
dwnoble@gmail.com

/s/ *Peter D. DeChiara*